UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Powerlift Door Consultants, Inc.,                    Case No. 21-cv-1316 (WMW/ECW)

                        Plaintiff,
                                                              **ORDER**
        v.

Lynn Shepard et al.,

                        Defendants.

---

In a July 12, 2021 Order, this Court granted Plaintiff Powerlift Door Consultant, Inc.'s (Powerlift) motion for a preliminary injunction. Defendants now move to stay the preliminary injunction pending Defendants' appeal of the July 12, 2021 Order. (Dkt. 36.) Powerlift opposes Defendants' motion to stay the injunction and cross-moves for an order holding Defendants in civil contempt for willfully refusing to comply with the Court's injunction. (Dkt. 42.) For the reasons addressed below, Defendants' motion to stay is denied and Powerlift's motion for civil contempt is granted.

## BACKGROUND

Powerlift is a South Dakota corporation operating in the hydraulic-lift-door industry and owns associated trademarks. Defendant Lynn Shepard is the owner and operator of Defendant Rearden Steel Manufacturing LLC (Rearden), a Powerlift licensee.[1] Rearden operates under the business name Powerlift Hydraulic Doors of

---

[1]     The complaint alleges that Defendants Rearden Steel Inc. and ABC Corporation are fictitious designations used by Shepard when operating as a Powerlift licensee. The

Florida.  In 2014, Shepard, on behalf of Rearden, entered into a distribution agreement with Powerlift (Distribution Agreement).  Powerlift alleges that on April 23, 2021, Shepard sent an ephemeral, self-destructing email to at least 12 Powerlift licensees located throughout the United States, seeking support for a plan to fix what Shepard considers to be corporate- and product-related issues with Powerlift.  Among other "Demands," Shepard's email expresses a desire to change Powerlift's corporate structure from a licensee-based to a franchise-based system.  Powerlift subsequently purported to terminate the Distribution Agreement.

Powerlift commenced this breach-of-contract and trademark-infringement action against Defendants on June 1, 2021.  Powerlift's complaint alleges that Defendants breached the Distribution Agreement and that Defendants are improperly using Powerlift's trademarks and confidential information.  In a July 12, 2021 Order (Injunction Order), the Court granted Powerlift's motion for a preliminary injunction, concluding that each of the four *Dataphase* factors supports granting preliminary injunctive relief.  *See Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981).  The Injunction Order provides that Defendants and "all other officers, directors, members, shareholders, agents, employees and persons acting in concert with them, who receive actual notice of this Order, are hereby **ENJOINED** from using Powerlift's trademarks, including the trademarks registered as numbers 3994263 and 5612680 with the United States Patent and Trademark Office."   The Court also ordered Defendants to

---

Court will refer to the corporate defendants collectively as "Rearden" unless otherwise noted.

"comply fully with their post-termination obligations in Articles 9.C. and 12.A. of the Distribution Agreement between the parties."

On July 19, 2021, Defendants filed a notice of appeal to the United States Court of Appeals for the Eighth Circuit. That appeal remains pending. On July 21, 2021, Defendants moved to stay the Injunction Order pending appeal. That same day, Powerlift moved for an order holding Defendants in civil contempt for willfully refusing to comply with the Injunction Order.

**ANALYSIS**

## I.      Motion to Stay Injunction Pending Appeal

Defendants seek a stay of the Injunction Order pending their appeal of the Injunction Order. Powerlift opposes a stay.

Unless a court orders otherwise, an interlocutory judgment in an action for an injunction is "not stayed after being entered, even if an appeal is taken." Fed. R. Civ. P. 62(c). While an appeal is pending from an interlocutory order that grants an injunction, a district court may suspend or modify the injunction "on terms for bond or other terms that secure the opposing party's rights." Fed. R. Civ. P. 62(d). Granting such a stay is an extraordinary remedy because it "is an intrusion into the ordinary processes of administration and judicial review, and accordingly is not a matter of right, even if irreparable injury might otherwise result to the appellant." *Nken v. Holder*, 556 U.S. 418, 427 (2009) (internal quotation marks and citation omitted). As such, whether to stay an order pending the outcome of an appeal is "an exercise of judicial discretion, and the

propriety of its issue is dependent upon the circumstances of the particular case."  *Id.* at 433.

When determining whether to grant a stay pending appeal, courts consider four factors: "(1) whether the party seeking the stay has demonstrated a strong likelihood of success on the merits; (2) whether the party seeking the stay will be irreparably injured without a stay; (3) whether a stay would substantially injure other parties; and (4) the public's interest."  *Org. for Black Struggle v. Ashcroft*, 978 F.3d 603, 607 (8th Cir. 2020). "The party requesting a stay bears the burden of showing that the circumstances justify an exercise of [the court's] discretion."  *Nken*, 556 U.S. at 433–34.

### A.     Likelihood of Success on Appeal

The first factor is whether Defendants have demonstrated a strong likelihood of success on the merits of their appeal.  *See Org. for Black Struggle*, 978 F.3d at 607. Defendants argue that they are likely to succeed on the merits of their appeal because "there is a serious question about whether the Distribution Agreement was in fact *lawfully* terminated."

As this Court previously observed in the Injunction Order, Article 3.A. of the Distribution Agreement prohibited Defendants from engaging in "any conduct directly or indirectly that would infringe upon, harm or contest . . . the goodwill associated with [Powerlift's trademarks], including any use of [Powerlift's trademarks] in a derogatory, negative, or other inappropriate manner in any media."  Contrary to this prohibition, Shepard sent an email to other Powerlift licensees that included numerous negative

statements about Powerlift and its products, including allegations that Powerlift products are defective and made with poor quality materials—accusations that could harm the goodwill associated with Powerlift's trademarks.

Defendants contend that Shepard's email did *not* violate Article 3.A. of the Distribution Agreement because the email did not expressly mention Powerlift's trademarks. But the Distribution Agreement prohibits both direct *and* indirect harm to the goodwill associated with Powerlift's trademarks. Significantly, Powerlift's trademarks are coextensive with its name and, therefore, derogatory or negative statements about Powerlift as an entity necessarily involve derogatory or negative use of Powerlift's trademarks. Thus, Defendants have not demonstrated a likelihood of success on the merits of their appeal on this basis.

Defendants also argue that Shepard's email did not materially harm the goodwill associated with Powerlift's trademarks, in part because the email was not sent to the general public. But the Distribution Agreement's prohibition on directly or indirectly harming the goodwill associated with Powerlift's trademarks is not limited to derogatory or negative statements made to the general public. The record reflects that Shepard's negative statements pertaining to Powerlift were sent to at least 12 Powerlift licensees across the United States. Such conduct could harm the goodwill associated with Powerlift's trademarks. And under the terms of the Distribution Agreement, such conduct authorized Powerlift to terminate the Distribution Agreement with 24-hours' notice—authority that Powerlift exercised here.

For these reasons, Defendants have not demonstrated a strong likelihood of success on the merits of their appeal.

### B.    Irreparable Injury

Defendants also must demonstrate that they will be irreparably injured by the Injunction Order without a stay.  *See Org. for Black Struggle*, 978 F.3d at 607.

Defendants argue that they will go out of business and default on multiple business loans if they are required to comply with their post-termination obligations under the Distribution Agreement, including the obligation to cease using Powerlift's trademarks, as the Court has ordered them to do.  Typically, economic loss does not constitute irreparable harm to a party unless "the loss threatens the very existence" of the party's business.  *Packard Elevator v. I.C.C.*, 782 F.2d 112, 115 (8th Cir. 1986).  Here, Defendants contend that enforcement of the Injunction Order "essentially means a cessation of [Defendants'] business and financial ruin."  Notably, however, Defendants present no evidence to substantiate these contentions.  Indeed, Defendants filed no evidence at all in support of their motion to stay the Injunction Order.[2]  Moreover, as the

---

[2]    Defendants subsequently filed a declaration opposing Powerlift's motion for civil contempt, in which Shepard attests that, although "90% of the Shepard Defendants' business relies on Powerlift's business," Powerlift's products are "only a small component" of most of Defendants' "full-service agreements, which include construction, demolition, painting and other related services."  Shepard also attests that "Defendants are taking steps to comply with the [Injunction] Order, [and] are also ensuring that there is a smooth transition between the businesses, while preserving client relationships, and preventing damage to the brand."  Based on these and other representations in Shepard's declaration, the record does not establish that Defendants' compliance with the Injunction Order necessarily would cause "cessation of

Court observed, Powerlift maintains that it is prepared to fulfill Defendants' active contracts to avoid causing Defendants to breach those contracts. Defendants present no evidence to the contrary.

Even if the Court were to accept Defendants' unsupported representations that "financial ruin" will result if they are required to comply with the Court's injunction, Defendants have not established that a stay of the injunction is warranted. Courts routinely deny motions to stay an injunction when the record reflects that the purported harm is self-inflicted. *See, e.g.*, *Pavek v. Simon*, No. 19-cv-3000 (SRN/DTS), 2020 WL 4013984, at *7 (D. Minn. July 16, 2020) (denying motion to stay injunction pending appeal when purported irreparable harm was largely self-inflicted by the defendants' dilatory conduct); *Portz v. St. Cloud State Univ.*, No. 16-1115 (JRT/LIB), 2019 WL 6727122, at *5 (D. Minn. Dec. 11, 2019) (denying motion to stay injunction when purported harm arose from the defendant's choices in the face of "alternatives that would satisfy" the injunction) (citing *Sierra Club v. U.S. Army Corps of Eng'rs*, 645 F.3d 978, 997 (8th Cir. 2011)); *Groupe SEB USA, Inc. v. Euro-Pro Operating LLC*, No. 14-137, 2014 WL 2504741, at *5 (W.D. Pa. June 3, 2014) (denying motion to stay injunction and observing that the defendant's losses were self-inflicted as a result of the false advertising in which the defendants engaged); *Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharms. Co.*, No. 00-5361 (WGB), 2001 WL 493266, at *2

---

[Defendants'] business and financial ruin" as opposed to potentially significant, but nonetheless *reparable*, economic loss.

(D.N.J. Jan. 17, 2001) (denying motion to stay injunction when purported irreparable harm was self-inflicted).

Here, as this Court observed in the Injunction Order, the harms that Defendants might experience are largely self-inflicted.  The deterioration of Defendants' contractual and business relationship with Powerlift preceded the Injunction Order.[3]  Moreover, despite multiple opportunities to do so, Defendants have not requested a security bond in a specific amount, substantiated by evidence establishing a rational basis for that amount, to protect Defendants' financial interests.[4]  Nor have Defendants proposed any particular modifications to the Injunction Order that would secure both parties' respective rights pending Defendants' appeal.[5]

For these reasons, Defendants have not demonstrated that they will suffer irreparable harm if the Injunction Order is not stayed pending their appeal.

---

[3]      Indeed, Defendants commenced a lawsuit in Florida state court against Powerlift more than a month before Powerlift commenced this federal lawsuit against Defendants.

[4]      The Court observed in the Injunction Order that Defendants had failed to provide a rational evidentiary basis to support a particular bond amount in either their written submissions or at the preliminary injunction hearing.  Defendants acknowledge that a district court may modify a previously imposed injunction "on terms for bond or other terms that secure the opposing party's rights" pending an appeal.  Fed. R. Civ. P. 62(d).  Nonetheless, Defendants have not requested a particular bond amount that is substantiated by evidence demonstrating a rational basis for that amount.

[5]      Defendants assert that the Distribution Agreement's three-year covenant not to compete should have been "blue penciled" to a one-year covenant not to compete.  Even if the Court had done so, thereby shortening the duration of the Injunction Order, the immediate burdens imposed on Defendants during the pendency of their appeal would be the same.  Similarly, the immediate burdens on Defendants will be the same even if they prevail on their blue-pencil argument on appeal.

### C.      Substantial Injury to Other Parties

Defendants also must demonstrate that a stay of the Injunction Order will *not* cause substantial injury to other parties.  *See Org. for Black Struggle*, 978 F.3d at 607.

As the Court concluded in the Injunction Order, Powerlift has demonstrated that it will suffer irreparable harm, in the form of consumer confusion, if Defendants are *not* enjoined from using Powerlift's trademarks.  *See Warner Bros. Ent. v. X One X Prods.*, 840 F.3d 971, 982 (8th Cir. 2016) (recognizing that, in a trademark-infringement action, "a finding that likelihood of confusion exists results in a presumption that a threat of irreparable harm exists"); *Gen. Mills, Inc. v. Kellogg Co.*, 824 F.2d 622, 625 (8th Cir. 1987) ("Since a trademark represents intangible assets such as reputation and goodwill, a showing of irreparable injury can be satisfied if it appears that [the trademark owner] can demonstrate a likelihood of consumer confusion.").  Defendants have not presented any argument or evidence establishing that the Court erred in reaching this conclusion. Moreover, "[i]rreparable harm results from breach of a franchisee's covenant not to compete when a franchisor has invested its training, good will, and resources in [the franchisee], which allowed [the franchisee] to . . . operate successfully."  *Novus Franchising, Inc. v. AZ Glassworks, LLC*, No. 12-1771 (MJD/TNL), 2013 WL 1110838, at *7 (D. Minn. Mar. 18, 2013) (internal quotation marks omitted).  As such, Defendants' ongoing noncompliance with their post-termination obligations under the Distribution Agreement risks harming Powerlift's customer relationships and the reputation of Powerlift's business and brand.

Accordingly, a stay of the Injunction Order likely would cause Powerlift substantial injury.

### D.    Public Interest

Defendants also must demonstrate that a stay of the Injunction Order is in the public interest.  *See Org. for Black Struggle*, 978 F.3d at 607.

As the Court observed in the Injunction Order, the public has an interest in not being confused as to the origin, sponsorship or approval of a trademark.  *See Anheuser-Busch, Inc. v. Balducci Publ'ns*, 28 F.3d 769, 776 (8th Cir. 1994).  As such, because Powerlift has demonstrated a likelihood of success on its trademark-infringement claims against Defendants, a presumption exists that it is in the public's interest to grant Powerlift preliminary injunctive relief.  *See J & B Wholesale Distrib., Inc. v. Redux Beverages, LLC*, 621 F. Supp. 2d 678, 689 (D. Minn. 2007).  Defendants have not presented any argument or evidence rebutting that presumption.  Moreover, enforcing contractual obligations, including valid noncompete provisions, serves the public interest. *See, e.g.*, *N.I.S. Corp. v. Swindle*, 724 F.2d 707, 710 (8th Cir. 1984) (affirming preliminary injunction and observing that if the disputed "noncompete agreements are valid, the public interest calls for their enforcement").

Defendants have not demonstrated that a stay of the preliminary injunction pending their appeal is in the public interest.

In summary, because Defendants have not established that any of the relevant factors warrant granting a stay of the Injunction Order, Defendants' motion to stay the Injunction Order is denied.

## II.     Motion for Civil Contempt

Powerlift moves for a finding of civil contempt against Defendants and PowerTek Doors, LLC (PowerTek).  PowerTek is not a party to this lawsuit, but it undisputedly was formed by Defendants "for the purpose of servicing [hydraulic] doors."  According to Powerlift, Defendants and PowerTek are directly competing with Powerlift and, contrary to the Injunction Order, "have failed to stop using Powerlift's trademarks and have otherwise failed to comply with their post-termination obligations under . . . the Distribution Agreement."  Defendants counter that Powerlift "did not even give the . . . Defendants a chance to fully comply with" the Injunction Order before moving for civil contempt.  Defendants maintain that they "have diligently complied with" the Injunction Order "to [the] best of their abilities while at the same time trying to save and run their business, uphold their contractual obligations, and effectuate a smooth transition."

Federal courts have the inherent authority to fashion appropriate means to coerce a litigant, or a non-party that is responsible for a litigant's actions, to remedy noncompliance with a court order.  *Chi. Truck Drivers v. Bhd. Lab. Leasing*, 207 F.3d 500, 505–07 (8th Cir. 2000).  An overarching goal of a court's contempt power is "to ensure that litigants do not anoint themselves with the power to adjudge the validity of orders to which they are subject."  *Id.* at 504.  Civil contempt may be used to coerce a

party to comply with a court order, to compensate the alleged contemnor's opponent for losses sustained, or both.  *Id.* at 505.  A party seeking contempt sanctions must prove, by clear-and-convincing evidence, facts warranting a civil contempt order.  *Id.*  When a plaintiff seeks a civil contempt order for alleged violations of a preliminary injunction, "it is not necessary to show that defendants violated the preliminary injunction willfully."  *Ford Motor Co. v. B & H Supply, Inc.*, 646 F. Supp. 975, 1002 (D. Minn. 1986).

### A.    PowerTek

As an initial matter, the parties disagree about the extent to which PowerTek, a non-party to this lawsuit, has a responsibility to comply with the Injunction Order.

A non-party can be subject to a civil contempt sanction to remedy noncompliance with a court order if the non-party has "notice of the court's order and the responsibility to comply with it."  *Chi. Truck Drivers*, 207 F.3d at 507.  Here, it is undisputed that the PowerTek entity was created by Defendants.  Moreover, the record reflects that Defendant Rearden is PowerTek's registered agent and shares an address with PowerTek, and that Defendant Shepard is PowerTek's authorized representative.  Because PowerTek had notice of the Injunction Order through Defendants, PowerTek may be subject to sanctions if Powerlift demonstrates that PowerTek failed to comply with its responsibilities under the Injunction Order.  *See id.*  As such, the Court must determine the scope of PowerTek's responsibilities under the Injunction Order.

The Injunction Order enjoins the use of Powerlift's trademarks by Defendants *and* their "agents, employees and persons acting in concert with them."  The Injunction Order

also requires Defendants to comply with their post-termination obligations under the Distribution Agreement. Although PowerTek is not a party to the Distribution Agreement, the Distribution Agreement prohibits Defendants from engaging in competitive business activities "directly or indirectly," including "through, on behalf of, or in conjunction with any person or entity." Therefore, PowerTek's responsibilities under the Injunction Order include the prohibition on using Powerlift's trademarks and the noncompete obligations in Article 9.C. of the Distribution Agreement.

PowerTek, therefore, may be subject to sanctions if Powerlift demonstrates, by clear-and-convincing evidence, that PowerTek used Powerlift's trademarks or competed with Powerlift in violation of the Injunction Order.

### B.      Clear-and-Convincing Evidence of Noncompliance

Powerlift must demonstrate, by clear-and-convincing evidence, that Defendants or PowerTek violated their responsibilities under the Court's Injunction Order. *Id.* at 505. Defendants concede that they have not fully complied with every aspect of the Injunction Order.

The Injunction Order first requires Defendants—and, by extension, PowerTek—to stop using Powerlift's trademarks. Powerlift presents the following evidence of noncompliance with this aspect of the Injunction Order: (1) a July 14, 2021 email sent by an employee of PowerTek with a signature block that includes the name "PowerLift Hydraulic Doors of Florida"; and (2) screenshots of PowerTek's website, taken on July

15, 2021, that include a photograph of a truck displaying Powerlift's logo and a customer testimonial that references the "Powerlift Hydraulic Door . . . brand."

The Injunction Order also requires Defendants to comply with their post-termination obligations under Articles 9.C. and 12.A. of the Distribution Agreement. These obligations include a covenant not to compete with Powerlift and a requirement that Defendants provide Powerlift with Defendants' customer lists, copies of all customer contracts and warranties, and payment of all sums due and owing to Powerlift. According to the declaration of Powerlift's president, as of July 21, 2021, Defendants had not provided to Powerlift (1) customer lists, (2) all customer contracts and warranties, or (3) payment for all sums due and owing to Powerlift.  In addition, Powerlift presents evidence that Defendants have competed directly with Powerlift, through PowerTek.  As of July 15, 2021, the PowerTek website advertised that PowerTek "specialize[s] in installation and servicing of hydraulic commercial door systems" and provides "one-stop Design, Build, and Install" services.  Such conduct violates Defendants' post-termination noncompete obligations, which prohibit Defendants from engaging in a "Competitive Business" for three years.[6]

Defendants do not specifically refute Powerlift's evidence of noncompliance. Indeed, Defendants do not dispute that unauthorized trademark use occurred in the first three days after the Court issued the Injunction Order.  And Defendants concede that,

---

[6]    Article 9.C.3. of the Distribution Agreement defines "Competitive Business" as "any business involving the marketing, sales, design, construction, or installation of hydraulically operated doors."

although they have complied with *some* aspects of the Injunction Order, they have not fully complied with the noncompete provisions of Article 9.C. and they have not provided Powerlift with customer lists, all customer contracts or all sums due and owing to Powerlift.

For these reasons, Powerlift has established by clear-and-convincing evidence that Defendants and PowerTek have failed to comply with several aspects of the Injunction Order.

### C.    Inability to Comply

Although Defendants concede that they have not fully complied with the Injunction Order, they argue that they have worked diligently and in good faith to substantially comply with the Injunction Order and that immediate full compliance is impossible without more time and guidance from the Court.

A "present inability to comply" with a court order is a defense to civil contempt. *Chi. Truck Drivers*, 207 F.3d at 506 (quoting *United States v. Rylander*, 460 U.S. 752, 757 (1983)).  If contempt is established by clear-and-convincing evidence, the contemnor must demonstrate an inability to comply by (1) explaining the inability in categorical detail; (2) establishing that the inability was not self-induced; and (3) demonstrating a reasonable, good-faith effort to comply.  *Id.*  "If a violating party has taken all reasonable steps to comply with the court order, technical or inadvertent violations of the order will not support a finding of contempt."  *United States v. Hefti*, 688 F. Supp. 1367, 1370 (E.D.

Mo. 1988) (quoting *Gen. Signal Corp. v. Donallco, Inc.*, 787 F.2d 1376, 1379 (9th Cir. 1986)), *aff'd*, 879 F.2d 311 (8th Cir. 1989); *accord Ford Motor Co.*, 646 F. Supp. at 1002.

Defendants assert that, although full compliance with the Injunction Order "cannot be accomplished overnight," their temporary unauthorized trademark use has ceased.  In a sworn declaration dated July 28, 2021, Shepard attests that Defendants have taken down the PowerTek website and ceased all use and display of Powerlift's trademarks, including the removal of all business signage, displays and other materials that include Powerlift's trademarks.   Indeed, there is no evidence of any unauthorized use of Powerlift's trademarks after July 15, 2021—three days after this Court issued the Injunction Order.   On this record, the Court is satisfied that Defendants have demonstrated a reasonable, good-faith effort to comply with this aspect of the Injunction Order despite their initial, temporary failure to comply fully.   Moreover, because this aspect of Defendants' noncompliance has ceased, coercive sanctions are unnecessary.

With respect to Defendants' failure to comply with their post-termination obligations under the Distribution Agreement, Defendants similarly assert that they "are taking reasonable steps to ensure compliance and . . . compliance with such a multi-facet[ed] business cannot be accomplished overnight."   According to Defendants, "the process to completely wind down their business to fully comply with the [Injunction] Order will likely take 6-9 months" because the "process requires (1) a complete reorganization of the entire business, (2) a detail[ed] accounting audit for the purpose of determining if any amounts are owed to Plaintiff, and (3) a detailed review of the

customer lists to determine which customers should be transferred to Plaintiff." Nonetheless, Defendants attest that they have begun this process, including working with Powerlift to address warranty complaints and beginning to compose a list of customers to be provided to Powerlift.

The Court is mindful that complex business operations cannot easily be modified overnight. Defendants reasonably assert that full compliance could not be accomplished in the nine days between the date of the Injunction Order and the date that Powerlift moved for civil contempt. However, Defendants have not reasonably shown that full compliance with the Injunction Order will be impossible for up to *nine months*, as Defendants contend. The Injunction Order requires Defendants, among other things, to stop competing with Powerlift and to provide Powerlift with all customer lists, customer contracts and warranties. Defendants' vague references to business complexities and hardships are insufficient to establish an inability to comply with these aspects of the Injunction Order.

With respect to Defendants' obligation to pay all sums due and owing to Powerlift, Defendants contend that they are unable to comply immediately because they must conduct an audit to determine what amounts are owed and any such determination is impacted by ongoing state-court litigation between Defendants and Powerlift. Defendants also contend that they require "more specific instructions from the Court" about this contractual obligation. But Defendants have not made a motion seeking relief from the Court as to this issue, nor have Defendants specifically identified what is

impeding their ability to determine the sums due and owing to Powerlift.  It is unclear what dispute or confusion exists as to this issue or what manner of "instructions" or "guidance" Defendants seek from the Court.  The Court cannot provide "specific instructions" to Defendants based on a vague request for "the Court's guidance" as to a dispute that has not been clearly and specifically presented to the Court.[7]  As such, Defendants have not established an inability to comply with this aspect of the Injunction Order.

In summary, although Defendants' temporary failure to cease using Powerlift's trademarks has been remedied, Defendants have not established an inability to comply with their post-termination obligations under the Distribution Agreement.  Accordingly, Defendants and PowerTek are held in civil contempt.  The Court may impose appropriate sanctions to coerce compliance with the Injunction Order.

### D.    Sanctions

Defendants and PowerTek undisputedly have failed to comply with their post-termination obligations under the Distribution Agreement, as required by this Court's Injunction Order, and have failed to demonstrate an inability to comply.  Therefore, the Court must determine the appropriate sanctions, if any, to impose.

---

[7]    For instance, it is unclear whether Defendants seek interpretation of a contractual provision, resolution of a factual dispute, interpretation of an ambiguity in the Injunction Order, a specific modification of the Injunction Order, or some other relief entirely. Defendants have neither clearly defined the nature of their confusion nor presented any proposed solution.  The Court will not engage in a guessing game to identify, let alone resolve, a vaguely characterized dispute that has not been properly presented to the Court.

"A district court may impose civil contempt sanctions for one of two purposes: to compensate parties aggrieved by contumacious conduct or to coerce compliance with the court's orders."  *Chaganti & Assocs., P.C. v. Nowotny*, 470 F.3d 1215, 1224 (8th Cir. 2006) (citing *United States v. United Mine Workers of Am.*, 330 U.S. 258, 303 (1947)). A coercive civil contempt sanction is avoidable through obedience, and either a fine or imprisonment may be imposed to secure compliance in appropriate circumstances. *Coleman v. Espy*, 986 F.2d 1184, 1190 (8th Cir. 1993) (observing that a coercive civil contempt sanction may include "fines or incarceration to force the offending party to comply with the court's order"); *Klett v. Pim*, 965 F.2d 587, 590 (8th Cir. 1992) (recognizing that contemnors have "the power to end the sanction by purging themselves of contempt, i.e., complying with the order").  If a monetary sanction "is designed to coerce a recalcitrant party to comply, the sanction should be payable to the court, rather than to the opposing party."  *Chaganti*, 470 F.3d at 1224 (citing *Hicks ex rel. Feiock v. Feiock*, 485 U.S. 624, 632 (1988)).  In addition, an award of reasonable attorneys' fees and costs incurred in bringing a contempt motion is within a district court's discretion. *See Reg'l Multiple Listing Serv. of Minn., Inc. v. Am. Home Realty Network, Inc.*, 960 F. Supp. 2d 958, 975–76 (D. Minn. 2013) (citing *Jake's, Ltd. v. City of Coates*, 356 F.3d 896, 900 (8th Cir. 2004)).

When fashioning a monetary sanction to secure compliance, courts consider " 'the character and magnitude of the harm threatened by continued contumacy,' 'the probable effectiveness of any suggested sanction in bringing about the result desired,' and 'the

amount of [the contemnor's] financial resources and the consequent seriousness of the burden' to that particular party." *Chaganti*, 470 F.3d at 1224 (quoting *United Mine Workers*, 330 U.S. at 304). Courts also may consider the willfulness of the contemnor's disregard of the court's order. *Edeh v. Carruthers*, No. 10-2860 (RJK/JSM), 2011 WL 4808194, at *3 (D. Minn. Sept. 20, 2011) (citing *United Mine Workers*, 330 U.S. at 303–04), *report and recommendation adopted*, 2011 WL 4808191 (D. Minn. Oct. 11, 2011). When imposing monetary sanctions, a district court should "specify whether the monetary sanctions are compensatory or coercive in nature, and explain the basis for whatever amount is ordered." *Chaganti*, 470 F.3d at 1225.

The Court's first consideration is the character and magnitude of the harm threatened by Defendants' continued failure to comply with the Injunction Order. Because Defendants have ceased using Powerlift's trademarks, the threat of irreparable harm arising from consumer confusion no longer appears to exist. But Defendants' failure to comply with their post-termination contractual obligations—in particular, Defendants' refusal to provide Powerlift with Defendants' customer lists, customer contracts and warranties—risks harming Powerlift's customer relationships and the reputation of Powerlift's business and brand.[8] These harms warrant a sanction that will coerce swift compliance.

---

[8]     Defendants contend that their delay in complying with the Injunction Order is a result of their efforts to "effectuate a smooth transition" of their customers to Powerlift. But the record reflects that Defendants' business relationship with Powerlift was acrimonious for months prior to the Injunction Order, and Defendants assert that they face "financial ruin" because of the Injunction Order. Given these circumstances,

The Court's second consideration is the probable effectiveness of a monetary sanction in bringing about Defendants' compliance.  In light of Defendants' stated concern about the continued viability of their business and the potential "financial ruin" they face, a risk of monetary consequences likely would motivate Defendants to comply with the Injunction Order.  As such, the probable effectiveness of a monetary sanction in bringing about Defendants' compliance is high.

The Court's third consideration is Defendants' financial resources and the consequent burden a monetary sanction would impose on Defendants.  The record as to Defendants' financial resources is limited.  But when opposing Powerlift's motion for injunctive relief, Defendants attested that they were among "the top producers for Powerlift Doors . . . for the last five years" and that Defendants "have 29 current contracts for 61 powerlift doors, totaling approximately $2 million in revenue within the next 12 months."  This evidence suggests that Defendants have sufficient financial resources to warrant the imposition of a significant monetary sanction to coerce compliance.

The Court's fourth consideration is whether Defendants' noncompliance is willful. An overarching goal of a court's contempt power is "to ensure that litigants do not anoint themselves with the power to adjudge the validity of orders to which they are subject." *Chi. Truck Drivers*, 207 F.3d at 504.  Here, Defendants do not dispute that they have

---

Defendants have little incentive to swiftly comply with the Injunction Order, as any delays will undermine Powerlift's business and relationships with Defendants' customers without any significant consequences to Defendants.  In short, unless coercive sanctions are imposed, Defendants appear to have little to lose by delaying their compliance.

failed to fully comply with the Court's Injunction Order.  Nor do they dispute Powerlift's characterization of Defendants' violation as willful.  Notably, a willful violation of a court order is "a deliberate or intended violation, as distinguished from an accidental, inadvertent, or negligent violation of any order." *Hubbard v. Fleet Mortg. Co.*, 810 F.2d 778, 781 (8th Cir. 1987) (internal quotation marks omitted).  A finding of "willful disobedience" of a court order "does not mean that the district court must find that the [litigant] acted in bad faith." *Hunt v. City of Minneapolis*, 203 F.3d 524, 527 (8th Cir. 2000).  Such a finding "requires only that [the litigant] acted intentionally as opposed to accidentally or involuntarily." *Id.* (internal quotation marks omitted).  Defendants' noncompliance may have been motivated, in part, by business difficulties and a good-faith belief that the Injunction Order would be stayed and Defendants will prevail on appeal.  But these facts do not make Defendants' noncompliance accidental or involuntary.  Rather, Defendants' noncompliance with the Injunction Order is undisputedly intentional and, thus, willful.

For these reasons, a meaningful monetary sanction is warranted to coerce Defendants to comply with the Court's Injunction Order.  As such, if Defendants have not purged their contempt within 14 days after the date of this Order, Defendants will incur a daily fine of $1,000, payable to the Court, until they have purged their contempt by complying fully with the Injunction Order.  In addition, Powerlift may seek by separate motion an award of its reasonable attorneys' fees and costs incurred in bringing its motion for civil contempt.

## ORDER

Based on the foregoing analysis and all the files, records and proceedings herein,

**IT IS HEREBY ORDERED**:

1.      Defendants' motion to stay, (Dkt. 36), is **DENIED**.

2.      Plaintiff's motion for civil contempt, (Dkt. 42), is **GRANTED** as follows:

   a.  Defendants and PowerTek are held in civil contempt.

   b.  Defendants and PowerTek shall comply fully with the Court's July 12, 2021 Injunction Order.

   c.  Defendants and PowerTek shall, no later than 14 days after the date of this Order, file a motion to purge their civil contempt, together with evidence demonstrating their full compliance with the Court's July 12, 2021 Injunction Order, or evidence demonstrating an inability to comply despite a reasonable, good-faith effort to do so.

   d.  If Defendants and PowerTek have not purged their contempt within 14 days after the date of this Order, Defendants and PowerTek will incur a daily fine of $1,000, payable to the Court, until they have purged their contempt by complying fully with the Court's July 12, 2021 Injunction Order.

   e.  Plaintiff may, within 14 days after the date of this Order, file a motion for an award of reasonable attorneys' fees and costs incurred in bringing

its motion for civil contempt, together with evidence in support of such an award.


Dated:  September 20, 2021                          s/Wilhelmina M. Wright
                                                   Wilhelmina M. Wright
                                                   United States District Judge