UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| Powerlift Door Consultants, Inc., | Case No. 21-cv-1316 (WMW/ECW) |
| Plaintiff, | |
| v. | **AMENDED ORDER** |
| Lynn D. Shepard, Jr.; Rearden Steel Manufacturing LLC; Rearden Steel Inc.; and ABC Corporation, | |
| Defendants. | |

---

Before the Court is Plaintiff Powerlift Door Consultants, Inc.'s (Powerlift's) motion for partial summary judgment against Defendant Lynn D. Shepard, Jr., (Dkt. 186), and Powerlift's motion for sanctions against Shepard and Defendant Rearden Steel Inc. (Dkt. 198.) For the reasons addressed below, Powerlift's motions are granted in part and denied in part.

## BACKGROUND

Powerlift is a South Dakota corporation that manufactures hydraulic-lift doors and their component parts. Shepard is the owner and operator of Rearden Steel Manufacturing LLC (Rearden), a Powerlift licensee.[1] Rearden, located in Fort Pierce, Florida, operated

---

[1] The complaint alleges that Defendants Rearden Steel Inc. and ABC Corporation are fictitious designations Shepard used when operating as a Powerlift licensee. Rearden Steel Manufacturing LLC filed for Chapter 11 bankruptcy protection in September 2022, and all proceedings against that entity are subject to an automatic stay. The relief Powerlift seeks against the defendant corporate entities in these motions is thus sought only against Rearden Steel Inc.

under the business name Powerlift Hydraulic Doors of Florida. The parties' relationship is memorialized in a 2014 distribution agreement that Shepard signed on his own behalf and on behalf of Rearden.

In April 2021, Shepard sent an ephemeral, self-destructing email to other Powerlift licensees across the United States. As relevant to the pending motions, the email made derogatory remarks about Powerlift and its products, stated that Shepard intended to force Powerlift to replace its distribution model with a franchise model, and opined that any existing distribution agreements were "Null and Void." (Compl. ¶ 12.) Powerlift terminated its distribution agreement with Rearden shortly after learning about Shepard's email. This lawsuit followed.

Powerlift's complaint alleges that Defendants breached the distribution agreement and that Defendants are improperly using Powerlift's trademarks and confidential information. Powerlift brings 10 claims for relief. Powerlift's first and second claims seek a declaratory judgment under federal and state law. *See* 28 U.S.C. § 2201; Minn. Stat. §§ 555 *et seq*. Powerlift's third claim for relief alleges that Defendants breached the Distribution Agreement. Powerlift's fourth claim alleges that Defendants are misappropriating trade secrets, in violation of the Defend Trade Secrets Act, 18 U.S.C. §§ 1836 *et seq*. Powerlift's fifth claim alleges that Defendants are violating the Minnesota Uniform Trade Secrets Act (MUTSA), Minn. Stat. §§ 325C.01(a) *et seq*. Powerlift's sixth claim alleges that Defendants are engaging in unfair competition, in violation of 15 U.S.C. § 1125(a), by using Powerlift's trademarks to sell hydraulic lift doors. Powerlift's seventh claim alleges that Defendants are falsely advertising that Defendants are affiliated with

Powerlift, in violation of 15 U.S.C. § 1125(a). Powerlift's eighth claim alleges that Defendants are engaging in trademark infringement, in violation of 15 U.S.C. § 1114(1), by continuing to use Powerlift's trademarks. Powerlift's ninth claim alleges that Defendants are engaging in trademark infringement, in violation of Minnesota law, *see* Minn. Stat. § 333.28, by improperly using Powerlift's trademarks in a manner that is likely to deceive the public as to the nature of Defendants' and Powerlift's relationship. Finally, Powerlift's tenth claim alleges that Defendants are engaging in trademark dilution, in violation of Minn. Stat. § 333.285, by using Powerlift's trademarks in the advertising and sale of products.

After filing its complaint, Powerlift moved for injunctive relief against Defendants' use of Powerlift's trademarks. The Court granted that motion and also ordered Defendants to comply with their post-termination obligations under the distribution agreement, including the agreement's non-competition provisions. (Dkt. 32). Several months later, because of Defendants' continued noncompliance with their post-termination obligations, the Court held Defendants in contempt of the injunction and ordered a civil fine of $1,000 per day until Defendants purged the contempt. (Dkt. 77.) Defendants purged the contempt before any fines were levied. (Dkt. 91.) The Court subsequently ordered Defendants to pay the attorneys' fees and costs that Powerlift incurred in filing the motion for contempt, a total of nearly $15,000. (Dkt. 144.)

Even after the contempt order, Defendants remained recalcitrant regarding their discovery obligations, necessitating substantial motion practice and resulting in another award of attorneys' fees. (Dkt. 138.) When Defendants failed to pay those fees, the Court

3

again held them in contempt, ordering both a civil fine until Defendants complied with their obligations and that Defendants pay the attorneys' fees Powerlift expended in seeking compliance with the previous fee order. (Dkt. 185.) The Court also ordered Defendants to reimburse Powerlift for the attorneys' fees that Powerlift expended in bringing the second contempt motion. (Dkt. 196.) To date, Defendants have not paid either the civil fine—which now totals more than $58,000—or any of the three attorneys'-fee awards.

In the meantime, Defendants' attorneys were permitted to withdraw without substitution, leaving Shepard representing himself and Rearden in default. *See Ackra Direct Mktg. Corp. v. Fingerhut Corp.*, 86 F.3d 852, 857 (8th Cir. 1996) (noting that "the law does not allow a corporation to proceed *pro se*" and that a corporation not represented by counsel is "technically in default"). The Clerk of Court entered default against both Rearden Steel Manufacturing LLC and Rearden Steel Inc. in September 2022, (Dkt. 178), days before Rearden Steel Manufacturing LLC entered bankruptcy proceedings.

Powerlift now seeks partial summary judgment against Shepard, contending that no genuine issues of fact remain as to Shepard's liability for Powerlift's claims.[2] When Defendants continued to fail to comply with their Court-imposed obligations to pay Powerlift's attorneys' fees, Powerlift filed the pending motion for sanctions. That motion seeks a default judgment against Shepard and Rearden Steel Inc. for their "repeated,

---

[2] Although Powerlift's memorandum in support of the motion for summary judgment requests summary judgment on "Shepard's liability for the counts alleged in the Complaint," (Dkt. 182 at 2–3), Powerlift's reply memorandum states that Powerlift seeks summary judgment only as to Powerlift's claims for declaratory judgment, breach of contract, and trademark infringement. (Dkt. 191 at 8.)

4

willful, and ongoing refusal to comply with [Court orders], as well as [their] pattern of hostile and noncooperative conduct throughout this litigation." (Dkt. 201 at 1–2.) Shepard responded to the summary-judgment motion, but neither Shepard nor Rearden filed any response to the sanctions motion. And the time to do so has passed.

ANALYSIS

I.  **Motion for Partial Summary Judgment**

Summary judgment is proper when the record before the district court establishes that there is "no genuine dispute as to any material fact" and the moving party is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute as to a material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When deciding a motion for summary judgment, a district court construes the evidence in the light most favorable to the nonmoving party and draws all reasonable inferences in the nonmoving party's favor. *See Windstream Corp. v. Da Gragnano*, 757 F.3d 798, 802–03 (8th Cir. 2014). To establish that a fact is genuinely disputed, the nonmoving party must "submit affidavits, depositions, answers to interrogatories, or admissions on file and designate specific facts" in support of that assertion. *Gander Mountain Co. v. Cabela's, Inc.*, 540 F.3d 827, 831–32 (8th Cir. 2008); *see also* Fed. R. Civ. P. 56(c)(1)(A). A nonmoving party may not "rest on mere allegations or denials but must demonstrate on the record the existence of specific facts which create a genuine issue for trial." *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995) (internal quotation marks omitted).

Because Shepard is proceeding *pro se*, the Court liberally construes his filings. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

Powerlift requests summary judgment as to Shepard's liability for Powerlift's declaratory-judgment, breach-of-contract, and trademark-infringement claims.

### A. Declaratory Judgment

Counts One and Two of the complaint seek a declaratory judgment under federal and state law. Powerlift asks the Court to declare that the distribution agreement gave Powerlift the right to terminate the agreement in light of Defendants' material breaches of it and to declare that the agreement "has, in fact, been terminated." (Compl. ¶ 86.)

Powerlift is not entitled to summary judgment on its declaratory-judgment claims because "[a] declaratory judgment is a remedy, not a cause of action." *Wolff v. Bank of New York Mellon*, 997 F. Supp. 2d 964, 979 (D. Minn. 2014). Powerlift's summary-judgment motion seeks only a determination of Shepard's liability, not an adjudication of Powerlift's remedies in light of that liability. Summary judgment on the declaratory-judgment counts, therefore, is not appropriate.

### B. Breach-of-Contract Claim

"Under Minnesota law, a breach-of-contract claim has four elements: (1) formation of a contract; (2) performance by plaintiff of any conditions precedent; (3) a material breach of the contract by defendant; and (4) damages." *Nelson v. Am. Fam. Mut. Ins. Co.*, 899 F.3d 475, 480 (8th Cir. 2018). Because Powerlift is not seeking a determination of the amount of damages, only the first three elements are at issue.

### 1. Existence of a contract

The first element of Powerlift's breach-of-contract claim is whether Powerlift and Shepard had a contract. Shepard asserts that he cannot be personally liable for any breach of the agreement because he is not a party to it. Because the agreement was between only Powerlift and Rearden Steel Manufacturing LLC, Shepard contends, there is no contract between him and Powerlift. Shepard contends that he signed the agreement only as an agent for Rearden Steel Manufacturing LLC.

The agreement provides that it is between Powerlift and "'Licensee' . . . as identified on the Data Sheet attached as Schedule A," however. (Dkt. 1-1 at 3.) Schedule A, in turn, lists as "Licensee" both Lynn Shepard and Rearden Steel. And the non-compete paragraph of the distribution agreement specifically states that it applies to "all officers, directors, members, managers, partners . . . and holders of any ownership interest" in the Licensee company. (*Id.* at 8, ¶ 9.C.) There is no genuine dispute that Shepard was bound by the obligations in the distribution agreement.

Moreover, Defendants' Answer establishes that Shepard is a party to the distribution agreement, admitting that "[b]oth Shepard and Rearden are licensees to this Distribution Agreement." (Dkt. 29 ¶ 7.) Parties are bound by the admissions in their pleadings, and Shepard cannot manufacture a genuine issue of material fact by now contradicting those admissions. *Nat'l Sur. Corp. v. Ranger Ins. Co.*, 260 F.3d 881, 886 (8th Cir. 2001); *see also United States v. Midtling*, No. 20-CV-0903 (WMW/DTS), 2022 WL 2806428, at *4 (D. Minn. July 18, 2022) ("[E]ven if the post-pleading evidence conflicts with the evidence in the pleadings, admissions in the pleadings are binding on the parties and may support

7

summary judgment against the party making such admissions.") (quotation omitted). The parties formed a binding contract, and the first element of a breach-of-contract claim is satisfied.

 2. **Conditions precedent**

The second element of the breach-of-contract claim is whether Powerlift performed any conditions precedent necessary to secure Shepard's performance under the distribution agreement. *See Nelson*, 899 F.3d at 480. Some of the breaches Powerlift claims are breaches of Shepard's post-termination obligations: the obligation not to "consult with or have any interest in a Competitive Business" for three years after the termination of the distribution agreement (*id.* at 8, ¶ 9.C.3); and the obligation to "cease all use and display" of Powerlift's trademarks, to pay all sums due, to provide Powerlift with a copy of Rearden's customer list, customer contracts and warranties outlining Rearden's obligations and to "obliterate all [b]usiness signage, displays or other materials . . . that bear any of the Trademarks" after the agreement's termination (*id.* at 11, ¶ 12.A).

Assuming for purposes of this motion that these obligations arise only if Powerlift properly terminated the agreement—and that a proper termination is a condition precedent to the post-termination obligations that the distribution agreement imposes, to successfully rebut Powerlift's motion, Shepard must come forward with evidence that could establish that Powerlift did not properly terminate the agreement. He has not done so. Shepard asserts that he "maintain[s] and hold[s] factual proof" that "the distribution agreement between Rearden Steel manufacturing [sic] LLC and PowerLift Door Consultants was impermissibly and improperly terminated." (Dkt. 199 at 3.) But Shepard does not point

to any specific facts in the record to support this contention. And the evidence in the record establishes that Powerlift properly terminated the agreement.

Paragraph 11 of the distribution agreement gives Powerlift the right to terminate the agreement for cause, defined as including failure to follow any terms of the agreement, either with 30 days' notice and an opportunity to cure immediately, with no opportunity to cure for "any unauthorized use of" Powerlift's confidential information, or 24 hours' notice and an opportunity to cure in the event of a "default . . . that materially impairs the goodwill associated with any of the Trademarks." (Dkt. 1-1 at 10, ¶ 11.3.) On April 28, 2021, after learning of Shepard's email communication with other distributors, Powerlift asked Shepard to either sign an addendum to the distribution agreement requiring Rearden to pay Powerlift's attorney's fees in drafting the addendum and to refrain from contacting any Powerlift distributors or vendors, or to face immediate termination of the distribution agreement with no opportunity to cure. (Dkt. 12-1.) This communication gave Shepard until 5:00 pm on April 29, 2021—24 hours—to return the signed addendum to Powerlift. Shepard did not respond, and on April 30, 2021, Powerlift sent Shepard a letter terminating the distribution agreement without any further opportunity to cure. (Dkt. 12-2.)

The record evidence establishes that Powerlift had ample cause to terminate the distribution agreement as it did. As addressed above, the agreement allows for its immediate termination with no more than 24 hours to cure for conduct "that materially impairs the goodwill associated with" Powerlift's trademarks. (Dkt. 1-1, at 10 ¶ 11.B.3.) Shepard expressly agreed not to use Powerlift's trademarks in a "derogatory, negative, or

9

other inappropriate manner." (*Id.* at 3, ¶ 3.A.) The "[f]ailure to follow any other terms outlined in this contract" gives rise to Powerlift's right to terminate it. (*Id.* at 10, ¶ 11.C.)

Powerlift's distributors are its customers, and the email Shepard sent to those distributors disparaged Powerlift's products. Powerlift received calls from the email's recipients expressing "concerns about Powerlift's products, brand and business model" in light of Shepard's email. (Dkt. 26, ¶ 8.) The undisputed evidence shows that Shepard's email impaired Powerlift's goodwill with its customers. *See Porous Media Corp. v. Pall Corp.*, 173 F.3d 1109, 1122 (8th Cir. 1999) (defining business goodwill to include how customers view the quality of the business's products). Powerlift has established that no facts remain in dispute as to whether it properly terminated the distribution agreement. The second element of Powerlift's breach claim is satisfied.[3]

### 3. Breach

The third element Powerlift must satisfy to establish its breach-of-contract claim is that Shepard breached the agreement. *Nelson*, 899 F.3d at 480. The complaint alleges that Shepard breached articles 3 and 6 and paragraphs 9.C, 13.H, and 12.A of the agreement. Shepard's opposition addresses only the alleged breach of Article 13.H, which requires that any litigation between the parties "must be brought in the state or federal district court located in the County of Lincoln, State of Minnesota." (Dkt. 1-1 at 15.) There is no dispute

---

[3] Even in the absence of evidence regarding the termination's propriety, Shepard cannot now argue that the termination was improper because he did not respond to Powerlift's request for admission that Powerlift "lawfully terminated" the distribution agreement. (Dkt. 183-5 at 2.) His failure to respond means that this fact is deemed admitted. Fed. R. Civ. P. 36(a)(3).

that Shepard filed suit in Florida state court against Powerlift and one of its corporate officers. Shepard contends that this lawsuit did not breach the distribution agreement because it was not brought against Powerlift. But the pleadings in state court establish otherwise. (Dkt. 192-1.) *See Stahl v. U.S. Dep't of Agric.*, 327 F.3d 697, 700 (8th Cir. 2003) (noting that courts "may take judicial notice of public records"). The undisputed evidence shows that Shepard breached paragraph 13.H.

In addition, as discussed above, Shepard's email to other Powerlift distributors constituted a breach of paragraph 3.A. of the distribution agreement. The evidence Powerlift proffers establishes that Shepard did not comply with his post-termination obligations in paragraphs 9 and 12 of the distribution agreement. Shepard continued to use Powerlift's trademarks after termination, refused to provide Powerlift with customer lists and contracts, and did not remove Powerlift's trademarks from business signage and materials, all in violation of paragraph 12.A. Powerlift's evidence also establishes that, shortly after entry of the injunction, Shepard began advertising a new venture, PowerTek, which claimed to install and service hydraulic doors. (Dkt. 47 ¶¶ 2, 5.) This activity violated the non-competition provision of the distribution agreement, paragraph 9.C. The undisputed evidence is that Shepard and Rearden breached the agreement and Powerlift is entitled to summary judgment on its breach-of-contract claim.

### C.     Trademark Infringement

Powerlift asserts both a federal trademark-infringement claim under the Lanham Act, 15 U.S.C. § 1114(1), and a state trademark-infringement claim, Minn. Stat. § 333.28. To establish that it is entitled to a judgment of liability against Shepard for trademark

11

infringement, Powerlift must demonstrate that there are no genuine issues of fact remaining to be resolved on the elements of its trademark-infringement claims. Those elements are that: (1) Powerlift has a valid, protectable trademark; and (2) Shepard's unauthorized use of that trademark created a likelihood of confusion. *See Davis v. Walt Disney Co.*, 393 F. Supp. 2d 839, 843 (D. Minn. 2005); *Minneapple Co. v. Normandin*, 338 N.W.2d 18, 22 n.5 (Minn. 1983).

Shepard does not dispute that Powerlift's trademarks are valid and protectable. He also does not dispute that he used the marks without authorization after Powerlift terminated the distribution agreement. Instead, Shepard contends that he cannot be personally liable for any trademark infringement because he was not a party to the distribution agreement. But as addressed above, Shepard is a named licensee and is bound by the agreement. To the extent that Shepard continued to use Powerlift's trademarks after the agreement's termination, Shepard can be individually liable for trademark infringement.

Shepard concedes, that through Rearden, he "continued to conduct business using the Plaintiffs [sic] trademarks for a short period of time post termination." (Dkt. 188 at 6.) Shepard apparently believes that, because the admitted infringement lasted for only "roughly 75 days," (*id.*), Powerlift did not suffer any damages. But damages are not the issue here. Rather, Powerlift seeks a judgment of liability, with damages left for later determination. "[C]ontinued trademark use by one whose trademark license has been cancelled satisfies the likelihood of confusion test and constitutes trademark infringement." *Burger King Corp. v. Mason*, 710 F.2d 1480, 1493 (11th Cir. 1983) (citing *U.S. Jaycees v.*

12

*Phila. Jaycees*, 639 F.2d 134 (3d Cir. 1981)); *see also Nw. Airlines, Inc. v. NWA Fed. Credit Union*, No. Civ. 03-3625 (DWF/SRN), 2004 WL 1968662, at *6 (D. Minn. Sept. 2, 2004) (citing same standard). Based on the undisputed record before the Court, including Shepard's admission that Rearden continued to use Powerlift's trademarks after the distribution agreement's termination, Powerlift is entitled to a judgment of liability on its trademark claims.

## II. Motion for Sanctions

In addition to seeking a judgment of liability on certain of its claims, Powerlift asks the Court to enter a default judgment against Shepard and Rearden Steel Inc. for their repeated and continued failure to comply with Court orders and failure to purge the most recent judgment of contempt. Shepard did not respond to Powerlift's motion for sanctions.

This Court has the "inherent power . . . to levy sanctions in response to abusive litigation practices." *Roadway Exp., Inc. v. Piper*, 447 U.S. 752, 765 (1980). That power includes the authority to dismiss an action when necessary "to achieve the orderly and expeditious disposition of cases." *Link v. Wabash R. Co.*, 370 U.S. 626, 630–31 (1962). Although the entry of default judgment as a sanction should be a "rare judicial act," *Edgar v. Slaughter*, 548 F.2d 770, 773 (8th Cir. 1977), a default judgment may be appropriate when a party's "failure to comply [with court orders] has been due to . . . willfulness, bad faith, or any fault of [that party]." *Societe Internationale Pour Participations Industrielles Et Commerciales, S. A. v. Rogers*, 357 U.S. 197, 212 (1958).[4] "When the facts show

---

[4] Rule 37(b)(2)(A)(vi), Fed. R. Civ. P., provides for sanctions, including default judgment, for a party that "fails to obey an order to provide or permit discovery." Although

wilfulness and bad faith . . . the district court need not investigate the propriety of a less extreme sanction." *Everyday Learning Corp. v. Larson*, 242 F.3d 815, 817–18 (8th Cir. 2001).

Shepard and Rearden have repeatedly engaged in willful violations of this Court's orders and have twice been held in contempt of court as a result. Despite the contempt orders, Shepard and Rearden have continued to fail to comply with their obligations to the Court and to Powerlift by refusing to pay either the civil fine levied as a result of their contempt or the attorney's fees Powerlift expended in attempting to secure compliance. Such contumacious, repeated and dilatory conduct constitutes sufficient grounds for a default judgment. *Ackra Direct Mktg.*, 86 F.3d at 856; *see also Everyday Learning*, 242 F.3d at 818 (affirming default-judgment sanction against a defendant who repeatedly violated court orders). Moreover, lesser sanctions have not resulted in any change to Defendants' obstructive behavior. The default judgment Powerlift seeks is appropriate.

---

Shepard and Rearden's noncompliance with their discovery obligations is not the explicit basis for Powerlift's motion for sanctions, decisions addressing Rule 37 sanctions are germane to the question of whether sanctions are appropriate here. Moreover, there is no dispute that Shepard and Rearden did not fully comply with their discovery obligations, and Rule 37 sanctions, therefore, are likely also warranted.

**ORDER**

Based on the foregoing analysis and all the files, records and proceedings herein, **IT IS HEREBY ORDERED**:

1. Plaintiff Powerlift Door Consultants, Inc.'s motion for partial summary judgment, (Dkt. 180), is **GRANTED** as to Plaintiff's claims for breach of contract and trademark infringement and **DENIED** as to Plaintiff's claims for declaratory judgment.

2. Plaintiff Powerlift Door Consultants, Inc.'s motion for sanctions, (Dkt. 198), is **GRANTED**.

3. Pursuant to Rule 54(b), Fed. R. Civ. P., there is no just reason for delay and the Clerk of Court shall enter judgment in favor of Powerlift Door Consultants, Inc., and against Defendants Lynn D. Shepard, Jr. and Rearden Steel Inc. on all claims in the complaint.

4. Plaintiff Powerlift Door Consultants, Inc., shall submit materials in support of any claim for a money judgment within 30 days of the date of this Order. Defendants may file an opposition to those materials within 14 days of the submission's filing, and any reply in support of the claimed money judgment must be filed within 14 days thereafter. Should Defendants fail to respond in the time permitted, the Court will enter judgment without further submissions from either party.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated:  April 18, 2023

s/Wilhelmina M. Wright
Wilhelmina M. Wright
United States District Judge